UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BILLY WAYNE STARK** | * | **CIVIL ACTION NO. 06-1557** |
| **VERSUS** | * | **JUDGE MINALDI** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Billy Wayne Stark, born January 22, 1956, filed an application for disability insurance payments on July 11, 2002, alleging disability as of July 3, 2002, due to back, neck, and right shoulder pain.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be remanded for further proceedings.

In fulfillment of F.R.Civ.P. 52, I find that this case should be remanded for further proceedings, based on the following:

**(1) Records from Lake Charles Memorial Hospital dated June 27, 2000 to July 6, 2000**. Claimant was admitted for a herniated disc at L4-5. (Tr. 86-87). Dr. William F. Foster, Jr. performed a hemilaminotomy at L4-5 on the right with a medial facetectomy, decompression of the lateral recesses, and decompression of the neural foramen. (Tr. 84, 88). Claimant was discharged in excellent condition. (Tr. 88).

**(2) Records from Dr. Kevin Gorin dated February 1, 2001 to June 28, 2002**. Claimant was seen in 2001 for right cervical and thoracic paravertebral pain with a referral of pain to the right superior trapezius and rhomboid muscles along the medial scapular border. (Tr. 118). Dr. Gorin's diagnoses were status-post right rotator cuff repair with anterior acromioplasty, persistent right shoulder musculature myofascial pain syndrome with trigger points in the superior trapezius, rhomboid, and deltoid musculature, possible right thoracic outlet syndrome, and a history of failed back surgery syndrome with intermittent right lumbosacral radiculopathy. (Tr. 112, 119). He prescribed Oxycodone, Diazepam, and Zanaflex. He opined that claimant had permanent partial disability, but could remain employed full-time without restriction.

On October 15, 2001, claimant complained of cervical pain radiating to the right shoulder and down the right upper extremity with a constant and deep aching. (Tr. 106). He rated his pain from 8/10 up to 10/10. He received two trigger point

injections and an injection into the cervical paravertebral musculature. Claimant continued to maintain full-time employment with light-medium duty restrictions. (Tr. 107).

On December 15, 2001, claimant reported good benefit from his selective injection therapy. (Tr. 101). His lower lumbar pain down the right leg was graded 4/10, and his shoulder pain radiating down the right upper extremity was graded 7/10. Dr. Gorin released him to full-time medium duty, with limited lifting and utilization of his right upper extremity. (Tr. 102).

On June 28, 2002, claimant complained of right shoulder pain, right cervical paravertebral pain, right superior trapezius pain, and right lower lumbar and right lower extremity symptoms. (Tr. 95). He had been working on an intermittent basis as a carpenter. He displayed no evidence of symptom magnification or malingering. He remained released to full-time medium duty. (Tr. 96).

**(3) Consultative Examination by Dr. David H. Steiner dated October 24, 2002**. Claimant complained of radiating pain into his right lower extremity down to the top of his toes. (Tr. 132). He reported that he had hurt his back lifting a 12-pound fiberglass tub, and subsequently had back surgery. He also had a history of a right shoulder injury, for which he had a decompression of the right shoulder and a rotator cuff repair. He still had a lot of pain in the shoulder across the upper back to

the base of the neck.

On examination, claimant was tender along the anterior margin of the glenohumeral joint.  He had some limitation in the shoulder.  (Tr. 133).  He could barely get his thumb to the belt line behind his back, and could get his hand behind his head if he ducked.  (Tr. 132).

Examination of the lumbosacral spine revealed tenderness midline along the scar and in the greater sciatic notch on the right.  Range of motion was fair.  (Tr. 133).  Claimant was able to get up on his heels and toes.  (Tr. 132).  His reflexes were good.  He had a positive straight leg raising test on the right, and extended 80 degrees.  He had decreased sensation over the right ankle, and weakness in the right dorsiflexors.

X-rays of the right shoulder revealed the anchors for the rotator cuff repair.  Lumbar spine films revealed a narrowing of the disc spaces at L4-5 and L5-S1.  Claimant had mild osteoarthritis at L3, L4, and L5.

Dr. Steiner's impression was degenerative disc disease of the lumbar spine, status-post laminectomy and disc excision with radiculitis, and status-post rotator cuff repair with residuals.  He noted that claimant's time frame for working was somewhat limited.  (Tr. 133).  He was not able to do strenuous activities or get into any compromised situation.  He was not able to do any significant lifting and bending.  He had some limitation in his right shoulder.  He had some radiculopathy.

Dr. Steiner opined that if claimant's situation were structured appropriately, he could to sedentary to light activities. He had some limitations in bending, twisting, and lifting. He stated that claimant would be much more comfortable working at a desk or counter height, but he was not a good candidate for going back into the job market for any type of manual labor. He noted that claimant's back and shoulder pain was always going to be persistent.

**(4) Physical Residual Functional Capacity ("RFC") Assessment by Dr. Albert E. Dean dated October 31, 2002**. Dr. Dean determined that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 136). He could stand/walk about 4 hours, and sit about 6 hours, in an 8-hour workday. He had unlimited push/pull ability.

Claimant had occasional postural limitations, but could never climb ladders, ropes, and scaffolds. (Tr. 137). Dr. Dean concluded that although claimant was somewhat limited, the medical evidence did not indicate that his activities were as restricted as he had alleged. (Tr. 140). Therefore, claimant's allegations were partially credible.

**(5) Records from Dr. Gorin dated October 21, 2002 to March 27, 2003**. On October 21, 2002, claimant complained that his right shoulder pain had worsened. (Tr. 164). He also had intermittent lumbar pain with numbness of the right toes. Dr.

Gorin continued claimant's medications. He determined that claimant could perform medium duty.

On March 27, 2003, claimant continued to have deep aching pain to the cervical area with radiation into the base of the skill, and numbness and tingling to the last three digits of the hands. (Tr. 174). He also had a sticking-like pain to the lower lumbar with radiation into the right buttock, right lower extremity, and foot. His activity level was very low. (Tr. 175). The medications were only taking the edge off of the pain. Dr. Gorin determined that claimant's functional level was light-medium duty. (Tr. 174).

**(6) Reports Dr. John F. Raggio dated October 8, 2003**. Claimant complained of low back pain radiating to the right hip, right leg, medial right shin, and great toe. (Tr. 242). He also complained of throbbing pain in his right shoulder, and constant left-sided neck pain. He smoked one and a half cigarettes a day. His medications included Oxycontin, Valium, Tizanidine, Keppra, and Naprosyn.

On examination, claimant was 6 feet two inches tall, and weighed 185 pounds. His straight leg raising test was negative. He had some right supraspinous atrophy, and painful range of motion of the right shoulder.

Claimant's sensory exam was normal. Reflexes were 1-2+ in the extremities. Gait and station, and heel and toe walk were normal. Flexion was purported in the

lumbar spine to 90 degrees. He had diminished internal rotation of the right shoulder.

Dr. Raggio had no evidence that claimant had a neurological problem. (Tr. 243). He thought that it was a situation of residual shoulder pain complaints and diminished range of motion and pain in the shoulder. The neurologic exam was unremarkable, and the atrophy in the absence of sensory deficit would likely be as a result of the rotator cuff tear. Dr. Raggio found no evidence of any current or past neurological involvement in the lower extremity and no neck symptoms.

Dr. Raggio was unable to substantiate any neurological basis for claimant's chronic continued pain complaints. He stated that in his opinion, any disability that claimant had sustained would be as a result of residual effects of the shoulder injury.

**(7) Records from Center for Orthopedics dated May 6, 2003 to January 14, 2004**. On May 6, 2003, claimant complained to Dr. Dennis Walker of right shoulder, back, neck, and occasional left shoulder pain. (Tr. 300). Since claimant's shoulder surgeries in 1995 and 1997, he had never fully recovered all of his shoulder strength.

Dr. Gorin had indicated that claimant had exhausted all conservative means of treating his pain, and that unless there was some sort of surgical or other intervention, claimant would be totally incapacitated because of the medication he required and the inability to find a job working with that much medication aboard. (Tr. 297, 300).

Claimant had a pain level of 7/10 without the medication and 4/10 with the medication.  He had never demonstrated any inappropriate response or symptom magnification during his evaluations by therapists and clinicians.  Dr. Gorin opined that, absent a definitive and curative procedure, claimant would require medications for the various aspects of his chronic pain for the rest of his life.  (Tr. 297).

On May 27, 2003, Dr. Walker wrote that he had never suspected claimant of malingering.  (Tr. 294).  He further stated that claimant was "presently on so much medication that he cannot pass any drug screen to seek employment as a laborer." (Tr. 293). He opined that claimant was not able to return to work as a result of his right shoulder and arm injury as of May 27, 2003.  (Tr. 280, 282, 306, 308).

Dr. Walker referred claimant to Dr. Fayez Shamieh, who saw claimant on October 22, 2003.  (Tr. 270).  On that visit, claimant complained of neck and right shoulder pain going to the right arm.  He also had numbness in the last two fingers of the right hand, pain between the shoulder blades going up to the occipital area of the head, and constant headaches at times.

On examination, claimant's reflexes were symmetrical 2+.  He had normal range of motion, no limitations or spasms, very minimal atrophy of the supraspinatus and trapezius muscles, and no weakness in any muscle group.  Grips were equal bilaterally.  Sensory exam was normal.

EMG and nerve conduction studies showed that claimant possibly had brachial plexus neuritis. (Tr. 271). However, thoracic outlet syndrome could not definitely be ruled out. (Tr. 269). Claimant also had evidence of mild right carpal tunnel syndrome.

On January 6, 2004, Dr. Walker stated that claimant's CT arthrogram did not show any evidence of rotator cuff damage. (Tr. 253). An MRI of the brachial plexus showed some questionable fullness of the nerve roots involving the brachial plexus on the right when compared to the left. (Tr. 250). Dr. Walker stated that claimant had very little partial permanent disability with respect to his shoulder function, and deferred to Dr. Gorin for claimant's disability determination. (Tr. 248).

**(8) Claimant's Administrative Hearing Testimony**. At the hearing on March 31, 2004, claimant was 49 years old. (Tr. 314). He had graduated from high school. He had training as an apprentice carpenter. (Tr. 315). He had worked as a carpenter and construction worker.

Claimant testified that he had tried to return to work, but could not maintain it with his medication. (Tr. 318). He had stopped working because of neck, back, and shoulder pain. (Tr. 322). He stated that he had tried to rehabilitate himself in order to return to work, but it did not help. (Tr. 322-23).

Claimant complained of pain in his right shoulder to the back of his neck, under his left shoulder blade, and into his left hand. (Tr. 323). He also had low back pain. (Tr. 324). He stated that he could not turn small screws, and had dropped a fork while eating. (Tr. 323). He said that he could not even pull weeds. (Tr. 326).

Claimant reported that the medication helped his pain. (Tr. 324). He said that he had tried to stop taking the medication, but his pain was too severe. (Tr. 326). He stated that he used a walking cane about "99 percent of the time." (Tr. 327-28).

**(9) The ALJ's Findings**. Claimant argues that: (1) the ALJ erred in finding that claimant was capable of performing substantially the full range of light work, despite a contrary finding in the RFC assessment, conflicting opinions of his treating physicians, and testimony of plaintiff regarding his abilities; (2) the ALJ erred in finding that claimant was not disabled, and (3) the Appeals Council erred in denying claimant's request for review, despite new evidence from his treating physicians that rendered him permanently and totally disabled. Because I find that the ALJ failed to develop the record as to claimant's pain, and also failed to consider the side effects of claimant's medications, I recommend that this case be **REMANDED** for further proceedings.

First, claimant argues that the ALJ erred in giving more weight to the opinion of the non-examining medical consultant than to his treating physicians regarding his

10

ability to work. [rec. doc. 8, p. 5]. It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

Here, claimant's treating physician, Dr. Walker, stated that he had taken claimant off of work as of May 27, 2003. (Tr. 285). He wrote that he had never suspected claimant of malingering. (Tr. 294). He further stated that claimant was "presently on so much medication that he cannot pass any drug screen to seek employment as a laborer." (Tr. 293). He opined that claimant was not able to return

11

to work as a result of his right shoulder and arm injury. (Tr. 280, 306, 308).

Additionally, Dr. Gorin noted that claimant had exhausted all conservative means of treating his pain, and that "unless a definitive and curative procedure is utilized, this patient will require medications for the various aspects of his chronic pain for the rest of his life." (Tr. 297).

In the decision, the ALJ found that the medical record did not support the level of pain and limitations asserted by claimant. (Tr. 15). He cited Dr. Walker's observation that claimant had full active range of motion in the right shoulder, and Dr. Raggio finding that claimant's neurological status was unremarkable. He further relied on Dr. Shamieh's determinations that claimant's sensory modalities were normal, with only very minimal denervations of the shoulder muscles. However, he failed to consider Drs. Walker and Gorin's opinions that claimant would be unable to return to work. (Tr. 280, 297, 306, 308).

In *Newton*, the Fifth Circuit, citing 20 C.F.R. § 404.1527(d)(2), held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. 209 F.3d at 456; *see also Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The Fifth Circuit noted that this regulation is construed in

Social Security Ruling ("SSR") 96-2p, which states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. *Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.* In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight.

SSR 96-2p, 61 F.R. 34490, 34491 (July 2, 1996) (emphasis added).

Additionally, the Fifth Circuit relied on SSR 96-5p which provides, with respect to "Residual Functional Capacity Assessments and Medical Source Statements," that "Adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527…, providing appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 61 F.R. 34471, 34474 (July 2, 1996). In this case, the ALJ failed to perform this analysis, which should be conducted on remand.

Further, the record reflects that claimant was taking several medications, including OxyContin, Diazepam, Zanaflex, and Keppra for his neck and back pain. (Tr. 68, 96, 102, 107, 112, 119, 121, 127, 150-51, 154-61, 164-75, 242, 297-300). OxyContin is a narcotic medication designed for the relief of moderate-to-severe pain. Under the regulations, the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or

ha[s] taken to alleviate [] pain or other symptoms." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (citing 20 C.F.R. § 404.1529(c)(3)(iv)). Although the ALJ cited Dr. Walker's observation that claimant's heavy medication adversely affected his chances of employment, he discounted that with an RN's statement that prescribed medications are usually not considered a problem with employment drug screens. (Tr. 14, 286, 300). However, the ALJ did not consider the *side effects* of claimant's medications on his ability to work, and his failure to do so was error. (emphasis added).

Finally, claimant argues that this matter should be remanded in light of new evidence relating from his treating physicians which deemed claimant permanently and totally disabled. [rec. doc. 8, pp. 7-9]. When new evidence becomes available after the Commissioner's decision and there is a reasonable possibility that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).

Reviewing the materiality of the new evidence requires the court to make two separate inquiries: (1) whether the evidence relates to the time period for which the

disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision. *Ripley*, 67 F.3d at 555.

In this case, claimant states that additional evidence consisting of a narrative report and two proof of disability forms were submitted to the Appeals Council. [rec. doc. 8, p. 1 n. 1]. These records are not included in the administrative record, but are attached to claimant's brief. [rec. doc. 8-2]. The report from claimant's treating physician, Dr. Gorin, dated July 20, 2005, indicates that claimant is "permanently and totally disabled from participation in gainful employment at any capacity," and that he "would be unable to maintain a normal work schedule without significant rest breaks and the extensive use of medications which would essentially disqualify him from any employment opportunities currently available." [rec. doc. 8-2, p. 2]. Another form executed by Dr. Walker on April 28, 2005, states that claimant had been unable to work since May 27, 2003, and is permanently disabled. [rec. doc. 8-2, pp. 6-7]. Thus, there is a reasonable probability that this new evidence, which pertains to the relevant time period, would change the outcome of the Secretary's decision.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of

15

42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to refer claimant for a claimant for a consultative examination or obtain a report from a treating physician regarding the effect of his neck, back, and shoulder impairments, as well as the side effects of his medications, on his ability to work. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN**

**(10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed October 26, 2007, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE